LOUIS MELZER v. E. H. SNOW AND ANOTHER.[1]

November 14, 1947.

No. 34,379.

John T. Rohwedder and Ralph S. Parker, for appellants.
Young & Gislason and Kelly, Mangan & Kelly, for respondent.

MAGNEY, JUSTICE.

In an action growing out of an automobile collision, plaintiff had a $17,000 verdict. Defendants appeal from an order denying their motion for a new trial.

On March 6, 1944, about one o'clock in the afternoon, plaintiff was operating a Dodge truck owned by his employer, W. A. Retzlaff. He was going west on state highway No. 14. Defendant Elton Kohls was operating a Ford truck owned by his employer, defendant E. H. Snow. He was going east on the same highway. About a mile and

[1]Reported in 29 N. W. (2d) 647.

a half east of the city of Sleepy Eye the trucks collided. Plaintiff was seriously injured. The Ford truck, with a bed or platform 6½ or 7 feet wide and 12 feet long, was loaded with a large incubator which extended an inch or so beyond each side. The incubator was about 14½ feet long and extended up about 8½ feet from the bed of the truck, which was 3 feet from the ground. The Dodge truck had no load. Each was a ton-and-a-half truck.

The weather was stormy. The wind was north to northwest and of blizzard intensity. Snow and dirt were being blown across the highway. Visibility was very poor. The 20-foot paved highway was generally icy but clear of ice in spots. The center line could be seen in most places. There were drifts across the road. The temperature was close to zero. On icy places, when there was a gust of wind, it was necessary to be very careful in holding the trucks in line so as to prevent them from swerving to the south. It was easier to hold the trucks in line where there was no ice.

Kohls testified that he was driving his truck about 15 miles an hour, and plaintiff claims that he was driving his truck 20 to 25 miles an hour. Each claims that he had his lights on and that the other did not.

North of the road and just east of the point of collision was a grove. This served as a windbreak, and where the road was so protected the wind was not so strong. Plaintiff was driving in the lee of this grove as he was approaching the place of the accident. For about 300 feet along the grove there was no snow blowing across the pavement.

Plaintiff testified that as he was so proceeding he could see the center line, the pavement, the north edge of the road, and the place where the shoulder and the pavement met. He claims that he was driving with his right wheels about two feet from the north edge of the pavement, and that he continued to drive in that position until the accident happened. As he approached the west edge of the grove, he saw snow and dirt blowing across the road about 70 feet ahead of him. He slackened his speed, but continued onward. He

did not reach the place where the snow and dirt were blowing across the pavement. He testified:

"I was about 30 feet away from it where that snow come across, see, and I noticed that car—that truck come out of the snowdrift—that dirt. I didn't have no chance to turn around at all no more. It was coming at a terrific speed towards me."

He said that he tried to turn to the north, but had no time to turn. He claims that he first saw defendants' truck when it was about 30 to 50 feet away and coming out of the cloud of dust and snow, and that he was on the right lane of the pavement when the trucks came together. Plaintiff was knocked unconscious and was unable to testify as to where the trucks came to rest. We are giving plaintiff's version of the collision and its cause, as we must.

After the accident, plaintiff's truck was standing across the north lane, facing south and a little west, with the front end over the center line and about halfway into the south lane. The front end of his truck rested on the front springs and the frame. The axle and wheels were standing on the shoulder on the south side. The Snow truck was about 30 or 35 feet east of it, facing northeasterly, with the hind wheels in the ditch on the south side, the left front wheel on the pavement, and the right front wheel on the shoulder. The left cab door of plaintiff's truck was near the center of the pavement. Plaintiff was lying on the pavement about in the center and parallel with it, with his feet underneath his truck. The incubator was knocked off defendants' truck, and the debris from it was lying on the south lane and south shoulder.

Kohls claims that he did not notice plaintiff's truck until it was right in front of him and about 20 feet away, coming toward him at an angle from the center of the road. Just before he observed plaintiff's truck he says that "there was a big gust of snow and wind," and "the wind was blowing hard and a lot of snow was blowing." He claims that that is what prevented him from seeing the oncoming truck until it was only 20 feet away from him. He testified:

"Q. And what, if anything, do you remember trying to do when you saw the car coming?

"A. Well, I took my foot off the foot pedal and I swung as far as I dared southwest, towards the south.

"Q. Do you think you swung in getting you farther to the south than you were?

"A. I think I did, otherwise he would have took me more in the center, I think. He just glanced off."

He described the collision in the following language:

"I think that he hit my bumper and when I swung to the outside that glanced him off and slid right alongside my truck. As he went by, I see Retzlaff and that is all I see; it was all over with."

He claims that no part of his truck was over the center line at any time as he was traveling east, but admits that it was difficult to control it.

There is no testimony in the case as to any skid marks or other marks made by the tires of the trucks. Nor is there any testimony as to where the glass from the broken headlights dropped.

Defendants claim that the verdict is not justified by the evidence and is contrary to law.

■ In Cosgrove v. McGonagle, 196 Minn. 6, 12, 264 N. W. 134, 137, we stated:

"* * * we are governed by what is obvious to an unprejudiced mind sitting in judgment. If the physical or demonstrable facts are such as to negate the truthfulness or reliability of the testimony of the Peerless driver and that of his brother, then clearly the verdict is without foundation and must be set aside. 'Facts, proved to the point of demonstration, control as against mere declarations of witnesses.'"

And in Reiter v. Porter, 216 Minn. 479, 484, 13 N. W. (2d) 372, 375, this court said:

"* * * 'undisputed physical facts may show that an accident could not have happened as a plaintiff claims and that he has no cause of action,' * * *."

We are of the opinion that the facts in this case do not prove to the point of demonstration that the accident could not have happened as claimed by plaintiff. Both parties agree that the collision took place as Kohls had just emerged from a cloud of dirt and snow which was blowing toward the west edge of the grove. Plaintiff, on the one hand, had been driving in the lee of this grove for a distance of 300 feet. This gave him protection from the snow and dirt of the blizzard and permitted him to see the pavement, the center line, and the shoulder, which he claimed he did. He claimed further that he was proceeding in his own lane about two feet from its north edge. Kohls, on the other hand, had been driving in a cloud of snow and dirt with practically no visibility, so that he was unable to see plaintiff until he had emerged from the cloud, at which time plaintiff was only 20 feet away. It is difficult to see how Kohls could be sure that he was traveling in his own lane under these conditions. There is no testimony as to any skids marks or other marks made by the tires of the trucks, or where the glass from the broken headlights dropped. The position of the trucks after the accident and the other evidence do not prove beyond demonstration that the collision took place in the south lane. Kohls testified that when he saw the other truck coming, "I took my foot off the foot pedal and I swung as far as I dared southwest, towards the south." That may fully explain why defendants' truck came to rest where it did. The fact that the incubator fell off the truck and landed south of the center line does not demonstrate just where the collision took place. We are of the opinion that the verdict is not manifestly unreasonable in view of all the evidence. 5 Dunnell, Dig. & Supp. § 7144. In Romann v. Bender, 190 Minn. 419, 424, 252 N. W. 80, 82, it is stated:

"* * * The most that can be said for the physical facts is that they were of aid to the jury in reaching a result favorable to the plaintiff or favorable to the defendant but not conclusive of how the accident happened. The law attaches to them no certain conclusion, and none of them were of a character demonstrating that the plaintiff had no cause of action."

A number of assignments of error are directed to the court's charge. The inadvertent language used should have been called to the court's attention in order to give it an opportunity to correct it. We have considered all the claimed errors in the charge and find. nothing to warrant us in disturbing the result.

Order affirmed.